# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MPC CONTAINMENT SYSTEMS, LTD., ) <br> MPC CONTAINMENT SYSTEMS LLC, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> JOHN E. MORELAND, LAWRENCE ) <br> MORELAND and MORELAND ) <br> INTERNATIONAL LTD., ) <br> ) <br> Defendants. ) | No. 05 C 6973 |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiffs MPC Containment Systems, Ltd. and MPC Containment Systems LLC (collectively, "MPC") filed a complaint against Defendants John E. Moreland, Lawrence Moreland, and Moreland International, Ltd., alleging six causes of action under federal and Illinois law.[1] Defendants answered the complaint and asserted eight affirmative defenses. Presently before is MPC's motion to strike two of Defendants' affirmative defenses pursuant to Federal Rule of Civil Procedure 12(f). For the reasons set forth below, we grant in part and deny in part the motion to strike.

---

[1] Plaintiff MPC Containment Systems, Ltd. filed the original complaint against Defendants but then filed a Second Amended Complaint to add MPC Containment Systems LLC ("MPC LLC") as a party plaintiff. (Compl. at 1.) MPC LLC's claims are the same as those originally alleged. (*Id.* at 1-2.) All references herein are to the Second Amended Complaint.

-1-

## BACKGROUND

MPC is a Delaware corporation that "is in the business of designing, manufacturing and installing primary and secondary containment systems, including flexible storage tanks that are used primarily to store water and fuel." (Compl. ¶ 9.) MPC asserts that it is a "prime supplier" of flexible storage tanks to the U.S. Air Force, among them a 200,000-gallon "soft shell" fuel tank that it specifically designed and manufactured for the Air Force. (*Id*. ¶¶ 10, 15.) MPC claims that the U.S. Armed Forces, generally, "have been MPC's largest customer for approximately [six] years." (*Id*. ¶ 14.)

Defendants John Moreland and Lawrence Moreland both, at one time, were MPC employees. John Moreland worked at MPC for approximately 25 years and ended his employment with the company on October 1, 2005. (Compl. ¶ 11; Ans. ¶ 11.) For most of his tenure at MPC, from 1984 to September 2003, John Moreland served as Executive Vice President of the Industrial Division. (Compl. ¶ 11; Ans. ¶ 11.) He also headed the business responsible for providing flexible storage tanks to the U.S. Armed Forces. (Compl. ¶ 12.) Defendants claim, however, that after September 2003 John Moreland's role with the flexible storage tank project was that of a "technical consultant" and that he worked out of his home office.[2] (Ans. ¶ 12.) Lawrence Moreland, who is John Moreland's son, worked as a full-time employee and as an independent contractor at MPC beginning in about 1987 until on or about October 1, 2005. (Compl. ¶¶ 18-19; Ans. ¶ 18.) The third defendant, Moreland International,

---

[2] Defendants assert that Moreland was a *consultant* at the time he ended his relationship with MPC. (Ans. ¶ 11.) ("[S]hortly before October 1, 2005, John E. Moreland severed his consulting relationship with MPC effective October 1, 2005."). However, we note that elsewhere in Defendants' answer, they concede that "on or about [September 29, 2005], John E. Moreland notified MPC that he was terminating his *employment* with MPC effective October 1, 2005." (Ans. ¶ 26 (emphasis added).)

Ltd. ("Moreland International"), is a corporation headed by John Moreland, which employs Lawrence Moreland. (Compl. ¶ 20; Ans. ¶ 20.)

In its complaint, MPC alleges that the Morelands, via Moreland International, competed against MPC for business from the U.S. Air Force and the Air Force's purchasing agent, Scientific Applications International Corporation ("SAIC"). (Compl. ¶ 22.) MPC's claim is succinctly summarized as follows:

> Beginning in about the fall of 2003, and continuing until he left MPC in October 2005, John E. Moreland and the Moreland Defendants implemented [a] clandestine plan to form a flexible storage tank business competitive with MPC's flexible storage tank business with the Armed Forces, particularly, the Air Force, and to operate it through Moreland International, all without MPC's knowledge or authorization. A central element of this scheme was to undermine the U.S. Air Force confidence in MPC's capability to manufacture flexible storage tanks and to inflate the Moreland Defendants' capabilities to do so at the expense of MPC.

(*Id.* ¶ 27.) MPC contends that the Morelands submitted competing bids to the Air Force using "confidential and proprietary information . . . [about] the costs, pricing, design and manufacture of MPC's Soft Shell Tanks." (*Id.* ¶ 23.) In addition, MPC argues that this alleged scheme took place while John Moreland "was employed by MPC and was working on MPC's bids for the very same order." (*Id.*)

As a result of Defendants' competing bids, MPC alleges that Moreland International obtained purchase orders from SAIC and the Air Force for over 100 tanks worth more than $10 million. (*Id.* ¶ 26.) These orders, MPC argues, "would have been obtained by MPC" but for Defendants' acts.[3] (*Id.*) MPC's complaint alleges six causes of action under federal and Illinois

---

[3] MPC claims that at least one of these orders was placed while John Moreland was still employed by the company. (Compl. ¶ 26.) Defendants concede that they did indeed receive an order for 64 tanks from the Air Force on September 29, 2005, and that "on or about that date,

law for both equitable relief and damages.[4]  In response, Defendants assert eight affirmative defenses.  MPC moves to strike two of those defenses:  waiver ("Affirmative Defense No. 5") and unclean hands ("Affirmative Defense No. 6").

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(c) requires parties to set forth any affirmative defenses in their responsive pleadings and specifically lists nineteen defenses that must be pled "affirmatively."  A motion to strike pursuant to Rule 12(f) is the appropriate means of removing "impertinent or redundant matter in any pleading and is the primary procedure for objecting to an insufficient defense."  *Van Schouwen v. Connaught Corp.*, 782 F. Supp. 1240, 1245 (N.D. Ill. 1991).  Motions to strike affirmative defenses are generally disfavored because of their potential to delay proceedings.  *U.S. v. 416.81 Acres of Land*, 514 F.2d 627, 631 (7th Cir. 1975) (citations omitted).  Such a motion should therefore not be granted unless the defense is "patently defective" on the face of the pleadings.  *Bobbitt v. Victorian House, Inc.*, 532 F. Supp. 734, 736 (N.D. Ill. 1982).  Defenses generally "will not be struck if they are sufficient as a matter of law or if they present questions of law or fact."  *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989).  Nonetheless, a motion to strike can be a useful means of removing "unnecessary clutter" from a case.  *Id.*

---

John E. Moreland notified MPC that he was terminating his employment with MPC effective October 1, 2005."  (Ans. ¶ 26.)

[4] The causes of action are as follows:  "(1) [C]opyright infringement under the United States Copyright Act of 1976, as amended, 17 U.S.C. § 101, *et seq.*; (2) violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (3) unfair competition and deceptive trade practices under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS §§ 510/1-7; (4) misappropriation of trade secrets under the Illinois Trade Secrets Act, 765 ILCS § 1065/1, *et seq.*; (5) breach of fiduciary duty under Illinois common law; and (6) tortious interference with prospective economic advantage under Illinois common law."  (Compl. ¶ 1.)

A three-step analysis is required when assessing the sufficiency of an affirmative defense. *Bobbitt*, 532 F. Supp. at 737; *see also Reis Robotics USA, Inc. v. Concept Indus., Inc.*, 462 F. Supp. 2d 897, 905 (N.D. Ill. 2006); *Surface Shields, Inc. v. Poly-Tak Prot. Sys.*, 213 F.R.D. 307, 308 (N.D. Ill. 2003); *Van Schouwen*, 782 F. Supp. at 1245. First, we determine whether the matter is appropriately pled as an affirmative defense. "Only matters that deserve a clear 'no' answer will be stricken to make the pleadings more concise." *Bobbitt*, 532 F. Supp. at 737. Second, we consider whether the defense has been adequately pled pursuant to the requirements of Federal Rules of Civil Procedure 8 and 9. *Id.*; *Reis Robotics USA, Inc.*, 462 F. Supp. 2d at 905. Finally, we evaluate the sufficiency of the defense pursuant to the standard followed in assessing Rule 12(b)(6) motions. *Bobbitt*, 532 F. Supp. at 737; *Reis Robotics USA, Inc.*, 462 F. Supp. 2d at 905. Ultimately, a defense should be stricken only if the defendant cannot prove any set of facts in support of the defense that would defeat the complaint. *Bobbitt*, 532 F. Supp. at 737; *Reis Robotics USA, Inc.*, 462 F. Supp. 2d at 905.

## ANALYSIS

### A. Affirmative Defense No. 5: Waiver

MPC first moves to strike the affirmative defense of waiver. Waiver is an equitable defense that must be pled with the specific elements required to establish the defense. *Reis Robotics USA, Inc.*, 462 F. Supp. 2d at 907; *see also Yash Raj Films (USA) Inc., v. Atl. Video*, No. 03 C 7069, 2004 WL 1200184, at *3 (N.D. Ill. May 28, 2004). Under Illinois law, waiver is "the intentional relinquishment of a known right." *Builders Bank v. First Bank & Trust Co. of Ill.*, No. 03 C 4959, 2004 WL 626827, at *6 (N.D. Ill. Mar. 25, 2004) (citing Illinois law).[5]

---

[5] *See also Weber Shandwick Worldwide v. Reid*, No. 05 C 709, 2005 WL 1651030, at *6 (N.D. Ill. May 12, 2005); *Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*, No. 02 C 2523,

Defendants assert that MPC's claims regarding John Moreland's breach of fiduciary duty are barred because MPC allegedly has known about Moreland International "for over twenty years." (Ans. at 18.) Indeed, Defendants claim that MPC actually conducted business with Moreland International, "hiring the company as a subcontractor, buying material from the company, and supplying material to the company." (*Id*.) Furthermore, Defendants allege that MPC "has known about and consented to [John Moreland] operating Moreland International at the same time he was employed by MPC, and [knew] that Moreland International [was selling] products in competition with MPC" while Moreland was still employed at the company. (*Id*.)

MPC, on the other hand, asks us to strike Affirmative Defense No. 5 because Defendants failed to "plead the material elements of the waiver defense" – namely that MPC "voluntarily and intentionally relinquished the right to bring their claim." (Mot. at 1; Pl.'s Reply at 2.) MPC argues that the "crucial deficiency" in Defendants' pleading is that they "do not allege that MPC knew or consented to the conduct that formed the basis for the breach of fiduciary duty." (Pl.'s Reply at 3.) In other words, MPC contends that Defendants should have specifically pled that "MPC knew of and consented to John Moreland competing with MPC for the same order of flexible fuel tanks from the Air Force, while he was still an employee of MPC." (*Id.* at 2-3.)

We disagree with MPC's assertion that Defendants were required to plead the waiver defense so narrowly to survive a Rule 12(f) motion. As stated previously, affirmative defenses are pleadings that must comply with the basic pleading requirements of the Federal Rules of Civil Procedure. *Bobbitt*, 532 F. Supp. at 737; *Heller Fin., Inc.*, 883 F.2d at 1294. An affirmative defense therefore "need only set forth 'a short and plain statement' of the nature of

---

2003 WL 1720073, at *8 (N.D. Ill. Mar. 31, 2003) ("For waiver to be asserted, defendants must claim [plaintiff] made a 'voluntary, intentional relinquishment of a known right.'").

the defense." *Bobbit*, 532 F. Supp. at 737; *Heller Fin., Inc.*, 883 F.2d at 1294. Further, the defense must include some direct or inferential allegations as to each element of the defense asserted. *Renalds v. S.R.G. Rest. Group*, 119 F. Supp. 2d 800, 802 (N.D. Ill. 2000) (citation omitted). Bare bones legal conclusions, however, will not be sufficient to survive a motion to strike. *Heller Fin., Inc.*, 883 F.2d at 1295; *see also Weber Shandwick Worldwide*, 2005 WL 1651030, at *5 ("Where an affirmative defense is merely listed without a short statement to explain the basis for the defense, it is properly stricken.").

When we accept all well-pled allegations as true and construe them in Defendants' favor, we find that Defendants have pled sufficient facts from which to infer that MPC voluntarily relinquished its right to claim that John Moreland breached his fiduciary duties.[6] Defendants' pleading on the waiver defense is neither "patently defective," nor does it consist of the types of "bare bones legal conclusions" that are insufficient to survive a motion to strike. *Compare with Builders Bank*, 2004 WL 626827, at *5-6 (granting a motion to strike the affirmative defense of waiver because defendant merely alleged, "[p]laintiff is barred under the doctrine of . . . waiver," without providing additional bases for the defense); *Yash Raj Films (USA) Inc.*, 2004 WL 1200184, at *2-3 (granting a motion to strike the waiver defense because defendant conclusorily named the legal theory of "waiver" without producing any bases for the allegation). Accordingly, we deny MPC's motion to strike Defendants' Affirmative Defense No. 5.

---

[6] For instance, it is possible to infer that MPC relinquished its right because it had not taken steps to stop Moreland International's operations or John Moreland's leadership thereof. Indeed, Defendants expressly argue that "MPC's knowledge of and acquiescence to [John] Moreland's operation of Moreland International while he was also employed by MPC is inconsistent with an intent to enforce its right to have [John] Moreland work solely on behalf of MPC, and therefore constitutes an implied waiver of MPC's right to object to Moreland International's competition with MPC." (Ans. at 4-5.)

### B. Affirmative Defense No. 6: Unclean Hands

Next, MPC moves to strike Defendants' unclean hands defense. Under the Illinois unclean hands doctrine, a party seeking equitable relief may be denied such relief if that party engaged in misconduct, fraud or bad faith that was directed toward the defendant, and if the alleged misconduct involved the same transaction at issue in the suit. *SEG Liquidation Co., LLC v. Stevenson*, No. 07 C 3456, 2008 WL 623626, at *4 (N.D. Ill. Mar. 6, 2008) (citing Illinois law); *see also Ocean Atl. Corp.*, 2003 WL 1720073, at *5 (citations omitted); *Safe Bed Tech. Co. v. KCI USA, Inc.*, No. 02 C 0097, 2003 WL 21183948, at *5 (N.D. Ill. May 20, 2003). "Misconduct that is not directed at the other party or that is tangential to the transaction at issue will not be considered directly connected." *SEG Liquidation Co., LLC*, 2008 WL 623626, at *4.

Defendants assert that MPC's unclean hands stem from MPC's "efforts to interfere with [Moreland International's] relationships with its suppliers and customers . . . [and MPC's] fraudulent actions in obtaining a patent from the United States Patent & Trademark Office ("USPTO")." (Ans. at 18.) Defendants claim that MPC filed and obtained a patent for a "Flexible Storage Tank" from the USPTO without attributing the proper inventor – allegedly Mr. James Ford – in the patent application. (Ans. at 19-21.) This patent was issued on May 8, 2007 as U.S. Patent No. 7,213,970 ("'970 patent").[7] (Ans. at 21.) Defendants contend that MPC's

---

[7] In their answer, Defendants detail at length the various steps that allegedly MPC took to "drop Mr. Ford as an inventor," focusing on a series of patent applications completed prior to the '970 application and communications between MPC lawyers and Ford. In March 2002, MPC filed a provisional patent application for a "Soft Shell Storage Tank" listing Edward Reicin and John ("Jack") Moreland as inventors. (Ans. at 18.) In February 2003, MPC then converted the provisional application into a full utility application for a "Flexible Storage Tank," adding twenty claims and a third inventor, James Ford, to the application. (*Id.* at 19.) In the subsequent months, Ford insisted that he would not sign the application without "certain clarifications and corrections" and payment. (*Id.* at 19-20.) On November 20, 2003, Ford faxed to MPC's counsel a modified and signed copy of a Declaration and Power of Attorney form, which was required to

unclean hands in obtaining the '970 patent specifically bars the claim for misappropriation of trade secrets because while MPC has claimed information regarding the "design and manufacture of [their] Soft Shell Tanks" to be trade secrets, it revealed information about the design of those same fuel storage tanks in the '970 patent application. (Ans. at 5-6 (contending that "it is well established that a trade secret becomes part of the public domain when it is disclosed in a patent").)

MPC asks us to strike Affirmative Defense No. 6 because it does not satisfy at least two of the three main elements required under Illinois law. MPC asserts that its allegedly unclean conduct in obtaining the '970 patent is "wholly unrelated to the subject matter" of the present litigation, and moreover, that the claimed misconduct was not directed toward Defendants. (Mot. at 4; Pl.'s Repl. at 6.) We agree.

Unclean hands, like waiver, is an equitable defense that must be pled with the specific elements required to establish the defense.[8] *Reis Robotics USA, Inc.*, 462 F. Supp. 2d at 907; *see also Bd. of Educ. of Thornton Twp. High Sch. Dist. 205 v. Bd. of Educ. of Argo Cmty. High Sch. Dist. 217*, No. 06 C 2005, 2006 WL 2460590, at *4 (N.D. Ill. Aug. 21, 2006); *Yash Raj Films*

---

file the application. (*Id.* at 20.) MPC allegedly filed a continuation patent application later that same day without Ford as a named inventor, and an MPC attorney subsequently informed Ford of the decision not to proceed under his stated conditions. (*Id.* at 20-21.) Defendants contend that "the claims of the '970 patent are all based on the original claims filed in the [prior] patent application which listed Mr. Ford as an inventor." (*Id.* at 21.)

[8] In addition, because unclean hands is an affirmative defense involving fraud, it is subject to the heightened pleading requirements under Federal Rule of Civil Procedure 9(b) and must therefore state the "time, place, and specific contents of the alleged false representations or omissions." *Ocean Atl. Woodland Corp.*, 2003 WL 1720073, at *5; *Tome Engenharia E. Transportes, Ltd. v. Malki*, No. 94 C 7427, 1996 WL 172286, at *11 (N.D. Ill. Apr. 11, 1996); *see also Bobbitt*, 532 F. Supp. at 737. Although Defendants have pled the "who, what, why, where and how" of the claimed misconduct and thus satisfy Rule 9(b) particularity requirements, they nonetheless fail to satisfy the first step in our three-step analysis.

*(USA) Inc.,* 2004 WL 1200184, at *3. Defendants satisfied the first element by pleading that MPC's actions in obtaining the '970 patent allegedly amounts to misconduct or fraud. Nonetheless, the defense as pled fails to meet the requisite second and third elements: that MPC's misconduct was directed toward John Moreland, Lawrence Moreland and Moreland International, and that the misconduct involved the very transaction at issue in the case.

First, we do not find any allegations that demonstrate how MPC's actions in obtaining the '970 patent constitute misconduct that was *directed toward* any of Defendants. The circumstances here are analogous to those from *Safe Bed Technologies Co. v. KCI USA, Inc.*, 2003 WL 21183948, a patent infringement case. As an affirmative defense, KCI alleged that Safe Bed was barred from bringing the patent case because Safe Bed's president, along with another attorney, had stolen confidential information from a third party – RWM Enterprises, Inc. – to obtain the very patent it was seeking to enforce against KCI. *Id.* at *4. The court struck the unclean hands defense, though, because Safe Bed's alleged misconduct was directed not toward KCI, but toward RWM, a party that was not involved in the lawsuit. *Id.* at *5. Similarly in the instant case, we find that the alleged misconduct by MPC and their lawyers in obtaining the '970 patent was directed at non-party James Ford, and not Defendants.

Second, even if Defendants satisfied the aforementioned element, Affirmative Defense No. 6 would be insufficient as a matter of law because MPC's alleged misconduct in obtaining the '970 patent is not connected to the transactions complained of in this suit. The case at bar involves Defendants' alleged actions in surreptitiously competing against MPC for sales of flexible fuel storage tanks, competition that supposedly was facilitated by the Morelands' use of MPC's valuable trade secrets to submit bids to the U.S. Air Force. MPC is not suing Defendants

for infringing the '970 patent, and indeed MPC has never asserted the patent "at any time against Defendants." (Pl.'s Repl. at 7.) Defendants, however, insist that MPC's alleged misconduct patent relates to the case because "the Morelands have been damaged by MPC's pursuit of lawsuit based on a misappropriation of trade secrets that were publicly disclosed in a patent application that issued as the '970 patent." (Ans. at 22.)

We find this argument unpersuasive, and again cite reasoning from *Safe Bed Technologies*. There, the court reiterated the principle that "the alleged misconduct dirtying the hands of the plaintiff must occur in the context of the *present* lawsuit." *Id.* at *5 (emphasis added). The court thus found that Safe Bed's misappropriation of RWM's inventions did not take place in the context of, and was not connected to, the patent infringement suit against KCI. *Id.* In this case, the link between MPC's alleged fraud in obtaining the '970 patent and the Morelands' misappropriation of trade secrets regarding the subject matter of that patent – the flexible fuel storage tank – is even more attenuated. As stated earlier, pleading tangential connections or mere interrelatedness among events is insufficient to satisfy the legal requirement that an alleged misconduct is "connected to" the transaction involved in the suit.[9] *SEG Liquidation Co., LLC*, 2008 WL 623626, at *4-5 (striking defendant's unclean hands defense

---

[9] Defendants also allege that MPC engaged in misconduct when it interfered with Defendants' relationships with suppliers and customers. We agree with MPC that this allegation is insufficiently developed. Defendants identify neither the nature of the interference, nor the names of the suppliers or customers. It is this type of conclusory allegation that courts consistently strike as insufficient. *See e.g., Surface Shields, Inc.,* 213 F.R.D at 307 (striking unclean hands defense because "in no instance does [the defendant] allege any specific facts which might support its conclusions," thereby failing to satisfy Rule 8(a) and the duty to allege the necessary elements of the defense); *Am. Top English v. Lexicon Marketing (USA), Inc.*, No. 03 C 7021, 2004 WL 2271838, at *11 (N.D. Ill. Oct. 4, 2004) (striking unclean hands defense because defendant's mere conclusory allegation that plaintiff acted with unclean hands includes no "short statement to explain the basis for the defense"). In any event, Defendants have not contested MPC's arguments on this interference claim.

because while plaintiff's mismanagement of a company was related to that company's failure and the defendant's ultimate liability at issue in the case, the events were "not intertwined to the degree that they would be considered part of the same transaction.")  We therefore grant MPC's motion to strike Affirmative Defense No. 6.

## CONCLUSION

For the reasons discussed above, we grant in part and deny in part MPC's motion to strike.  Specifically, we deny the motion as to Affirmative Defense No. 5 (waiver) and grant it as to Affirmative Defense No. 6 (unclean hands).  It is so ordered.

                        MARVIN E. ASPEN
                        United States District Judge

Date: April 17, 2008